# Transcript of the Testimony of

# **Carlton, Stephanie**

March 24, 2022

Honold v. Dollar General Corporation, et al.

**EXHIBIT**

**B**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

KAREN HONOLD                                          PLAINTIFF

VS.                         CASE NO. 6:21-cv-06140-RTD

DOLLAR GENERAL CORPORATION AND
DOLGENCORP, LLC D/B/A DOLLAR GENERAL              DEFENDANTS

ORAL DEPOSITION OF STEPHANIE CARLTON

(Taken on March 24th, 2022)

APPEARANCES

FOR THE PLAINTIFF:
        MR. D. SCOTT HICKAM
        211 Hobson Avenue
        Suite C
        Hot Springs, Arkansas  71913

FOR THE DEFENDANTS:
        MR. THOMAS G. WILLIAMS and
        MR. BYRON T. KEATON
        Quattlebaum, Grooms & Tull
        111 Center Street

        Suite 1900

        Little Rock, Arkansas  72201

Honold v. Dollar General Corporation, et al.
Carlton, Stephanie 3/24/2022

6

board the same page --

A.    Yes.

Q.    -- up to now?  Okay.  What is your address?

A.    10800 Legion Hut Road.

Q.    Okay.  Here in Little Rock?

A.    It's Mabelvale, Arkansas 72103.

Q.    Fayetteville?

A.    Mabelvale.

Q.    Mabelvale?

A.    Uh-huh.

Q.    Okay.  Like I said, I've got a little hearing problem. That's my fault.  How long have you been at that address?

A.    About five and a half years, six years at the most.

Q.    So you were living there three and a half years ago when this incident happened?

A.    Yes.

Q.    Okay.  Are you employed?

A.    Yes.

Q.    Where are you employed?

A.    Dollar General on Stagecoach.

Q.    Okay.  You're still employed by Dollar General?

A.    Yes.

Q.    Have you been continuously employed since -- for the last three and a half years with Dollar General?

A.    Yes.

Tammy L. Pierce

Honold v. Dollar General Corporation, et al.
Carlton, Stephanie 3/24/2022

9

MR. HICKAM:  Jump in there.

MR. WILLIAMS:  Okay.  What we tried to do was draw a rough diagram of the store, to just kind of show which way people moved and how the store was laid out.  And it was Miss Honold's recollection that there are aisles that run this way, and she was coming -- and then there are aisles that run this way.  And so it's just kind of a big picture of kind of the store layout.  That's what it's intended.  Front, back, sides.

THE WITNESS:  Okay.

MR. WILLIAMS:  Not drawn to scale or anything else.  Just a general, rough outline.

MR. HICKAM:  He's right.  Not to scale.  I don't think she meant to say there was exactly this many aisles or rows.

MR. WILLIAMS:  Yeah.

BY MR. HICKAM:

Q.   But does that generally look familiar to you?

A.   Okay.  Yes.

Q.   Now, what positions have you held since you were lead cashier?

A.   Now, I'm assistant manager.

Q.   Okay.  When were you made assistant manager?

A.   Probably about two and a half, three months after I started working there.

Tammy L. Pierce

Honold v. Dollar General Corporation, et al.
Carlton, Stephanie 3/24/2022

13

A.   An incident report, because I have to pull it off the computer in the office.

Q.   Did you, yourself, complete the report?

A.   Yes.

Q.   Okay.

A.   We did it right there.  That's what you have in front of you.

Q.   I might have just not heard this correctly, but who told -- who first alerted you to what happened?  Who told you?

A.   The friend that was with her.

Q.   Okay.  Did you see any marks or anything on the floor indicating that a spill had occurred?

A.   No, I did not.

Q.   Was there a cart near where she fell?

A.   Yes, there was.

Q.   Okay.  What was the cart doing there?

A.   It's a rolltainer that we work to stock the shelves.

Q.   Okay.  Are those supposed to be left unattended?

A.   We are allowed to leave one on the floor.  At times, we do have to leave them unattended to go and assist with other customers, but they're actually pushed out of the way.  They're not in the way of any -- you know, to cause anybody to trip or fall.  They're pushed up against the end caps.

Tammy L. Pierce

Honold v. Dollar General Corporation, et al.
Carlton, Stephanie 3/24/2022

25

Q. Okay. Could you try to get a copy of that for me? Not right now. And provide it to the attorneys so they can get --

A. I'm pretty sure she can get it for you.

Q. I'll ask her. That's a good idea.

A. Okay.

Q. That's a good idea. But that is in writing? It's not just something that's verbal?

A. Yes. Correct.

Q. If I could have that back for right now.

A. (Witness complies.)

Q. Do you use some sort of a hand-held device to check to make sure the store is free of hazards during the daily scheduled visual safety checks?

A. The safety checks pops up, I believe, every two hours.

Q. Every two hours?

A. Yes, sir.

Q. Okay. So, conceivably, something could be on the floor for up to two hours, if you're not -- if someone doesn't notify you or whatever?

A. No, sir.

Q. Okay. Why is that, if it's --

A. Because as an assistant manager, you're constantly moving through the store.

Q. Okay.

Tammy L. Pierce

Honold v. Dollar General Corporation, et al.
Carlton, Stephanie 3/24/2022

26

A.    I'm constantly working, walking through, helping customers, and I'm very aware of my surroundings.  I always have been that way, so I -- and that's what we're delegated to do.  You check everything.

Q.    Okay.  When was the last time you checked the area where she said that she fell prior to it being reported to you?

A.    What you mean, when was the last time I checked it?

Q.    When was the last time that you examined the floor in the area where --

A.    It would have been last night, because I worked last --

Q.    Okay.  Before she fell, how long --

A.    Before she fell?  Oh, I was over there in the area working, and I ended up going to the front of the store for some reason.  I cannot remember.  And I just know that they came over there and told me about it.

Q.    Okay.  Okay.  But there's no specific time for the safety check?  Is there any specific time that you're supposed to make a safety check?

A.    Is it a certain time that we go and check?

Q.    Yeah.  I'll just show you.  Here again on page six, it says to use the hand-held devices and do the safety check.  And, I'm wondering, is that accurate?  Do you actually do that?

A.    Yes, I do.  Because you need your hand-held.  You have

Tammy L. Pierce

Honold v. Dollar General Corporation, et al.
Carlton, Stephanie 3/24/2022

34

in the middle of the aisle?

A.   So they won't be in the way of our customers.

Q.   Okay.  So let me talk to you about, just in general, as I understand it, you're trained on store safety.  Right?

A.   Correct.

Q.   Are you trained to look for hazards?

A.   Yes.

Q.   And what are you trained to do if you see hazards?

A.   If I see a hazard, I am to deal with it as fast as I can to make sure that it's corrected.

Q.   And do you do that when --

A.   Yes.  I always do.

Q.   Okay.  Are you moving around the store a lot while you're on duty?

A.   Yes.

Q.   You're covering a lot of the store all the time?

A.   I'm constantly moving.  Being assistant manager, it's a fast pace, and so I'm constantly moving all the time.

Q.   And when you're doing that, are you looking for hazards?

A.   And when I'm doing that, I also delegate myself to make sure the floors are clear of any debris or anything that is normally not supposed to be there.

Q.   And, in addition to that, every couple hours, you're binged to do a safety check.  Right?

Tammy L. Pierce

Honold v. Dollar General Corporation, et al.
Carlton, Stephanie 3/24/2022

38

                    C E R T I F I C A T E
STATE OF ARKANSAS}
                 }      ss:
COUNTY OF SALINE }
          I, TAMMY L. PIERCE, Certified Court Reporter, a Notary Public in and for the aforesaid county and state, do hereby certify that the witness, STEPHANIE CARLTON, was duly sworn by me prior to the taking of testimony as to the truth of the matters attested to and contained therein; that the testimony of said witness was taken by me in machine shorthand and was thereafter reduced to typewritten form by me or under my direction and supervision; that the foregoing transcript is a true and accurate record of the testimony given to the best of my understanding and ability.
          I FURTHER CERTIFY that I am neither counsel for, related to, nor employed by any of the parties to the action in which this proceeding was taken; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially interested, or otherwise, in the outcome of this action; and that I have no contract with the parties, attorneys, or persons with an interest in the action that affects or has a substantial tendency to affect impartiality that requires me to relinquish control of an original deposition transcript or copies of the transcript before it is certified and delivered to the custodial attorney, or that requires me to provide any service not made available to all parties to the action.
          GIVE UNDER MY HAND and SEAL OF OFFICE on this 6th day of April, 2022.


_____
Tammy L. Pierce, CCR
LS Certificate No. 457
Notary Public in and for Saline County, AR

My commission expires:  September 24, 2023

Tammy L. Pierce